J. Howard Rossbach, J.
Originally this young defendant was charged with a felony — the brutal mugging and attempted robbery of the female complainant. As the case progressed through the court the charge was first reduced to a misdemeanor and finally to one of “ youthful offender ”.
Defendant is ready for trial. The case has previously been marked “ final ” against the People. The People cannot go to trial because the complainant has moved and cannot be found. Defendant, by his attorney, now moves to dismiss the whole proceeding. The Assistant District Attorney and the police officer candidly admit that they have no clue to complainant’s whereabouts.
To grant further adjournments would in all probability be futile and an unwarranted burden on defendant and his lawyer. On the other hand, to dismiss the case would give the defendant *971 the undeserved triumph of having ‘ ‘ gotten away with something Neither course is quite fair or appropriate.
There is a middle course which will be followed in this case. Defendant will be discharged on his own recognizance (D. O. R.) with the condition that no motion to dismiss may be made for one year. During this year he will be on an unofficial probation to behave himself; otherwise fresh efforts will be made to locate the complainant. Should the complainant appear, the case will be restored to the Trial Calendar.
The question remains as to whether or not a Judge of the Crimial Court of the City of New York has the power to grant a D. O. R. in an appropriate case. Prior to the court consolidation of 1962, which merged the Court of Special Sessions with the Magistrates’ Courts within New York City, literally thousands of cases received the disposition of “ D. 0. R” every year.[1] It was considered to be an effective means of dealing with the borderline case.[2] It was used not only as an unofficial probation but also as a dignified means of settling disputes without the necessity of anyone returning to court.
The power to grant a D. 0. R. is not too clearly spelled out in the statutes. The authority to do so stems from section 669 of the Code of Criminal Procedure which provides: “If the defendant be not indicted or tried * * * and sufficient
reason therefor be shown, the court may order the action to be continued from term to term, and in the mean time may discharge the defendant from custody, on his own undertaking, or on the undertaking of bail for his appearance to answer the charge at the time to which the action is continued.” While this section speaks of “ discharge * * * on [the defendant’s] own undertaking” rather than “ discharge on (defendant’s) own recognizance ”, this difference in verbiage is without substance.
*972 An appellate court has mentioned the D. 0. it. without unfavorable comment. In Matter of Silver v. Gassman (6 A D 2d 694 [1968]), a Justice of the Court of Special Sessions of the City of New York had granted a D. 0. ft. over the objection of the District Attorney of Kings County. The District Attorney’s application to restore the case to the calendar was denied. The District Attorney then successfully moved in the Supreme Court to compel the restoration of the case to the Special Sessions Calendar.
On appeal, the Appellate Division noted without comment or criticism that “ The defendant * * * had been discharged on his own recognizance pursuant to section 669 of the Code of Criminal Procedure.” It then affirmed the order to restore on the ground that, upon request of the District Attorney, such restoration was a ministerial act which the Justice of the Court of Special Sessions was bound to perform.
We find nothing in the new laws surrounding the creation of the Criminal Court which in any way abolishes the power of a Judge to grant a D. 0. B. Section 669 of the Code of Criminal Procedure remains unchanged. Notwithstanding the fact that in the last few years the number of D. 0. B.’s has radically decreased, the D. 0. B. remains a useful tool in the administration of justice for those Judges who have both the inclination and the fiber to use it.

. In 1960 the Court of Special Sessions granted D. O. R. in 13,642 cases.

. Report of the District Attorney of Kings County, N. Y., for the year 1955 (pp. 109-110): “A considerable number of eases in this court are DOR’d. It is fitting that an explanation be given for this procedure.
“A DOR is usually granted by the Court with the consent of the District Attorney in many simple assault eases. For example, this Court received a total of approximately 1900 assault eases during the year, the great bulk of which was brought by a wife against her husband, a landlord against a tenant, or a neighbor against a neighbor. By the time those cases have reached our Court, the parties have reconciled their difficulties and the complainant makes a request that the charge or charges he withdrawn. The request is usually granted in this type of case where the defendant has no prior record and where the injuries are n'ot serious. As a result, out of the 1900 assault cases received, about 1400 were discharged under the DOR, procedure.” (Emphasis supplied.)